DISBARMENT PROCEEDING
HAMLIN, Justice:
These proceedings were instituted by the Louisiana State Bar Association through its Committee on Professional Ethics and Grievances (hereinafter referred to as the Committee) against William P. Rutledge, a member of the Louisiana State Bar Association who is domiciled and resides in Lafayette, Louisiana.
On January 20, 1971, the Secretary of the Louisiana State Bar Association addressed a letter to William P. Rutledge informing him that the Committee had undertaken an investigation of certain conduct on his part as a member of the Bar of Louisiana; he was told that in the event he was found guilty, he may be subject to disciplinary action. The Secretary’s letter described the investigated conduct in Specification No. 1 — Committee File No. 2622 which recites:
“That on April 11, 1970 Dardanella B. Guyote was seriously injured as a result of an automobile-train collision in New Iberia. Mrs. Guyote subsequently died on April 15, 1970. That on a day between April 11, 1970 and April 15, 1970 you did without previous introduction, invitation or other justification approach Clyde Guyote, Sr., husband of the said Dardanella B. Guyote. You did at that time give to Mr. Guyote one of your business cards on the back of which you wrote the names of three (3) persons, who you said, you were representing in actions against the same railroad companies which were responsible for the injury to Mr. Guyote’s wife. [The dates were corrected to recite March instead of April] By and through’ such action you actively solicited employment as attorney to represent Mr. Guyote and his then injured wife.”
The letter supra of January 20, 1971, was followed by a letter of February 10, 1971, in which the Secretary of the Louisiana State Bar Association informed Rutledge that the specifications which had been furnished him were supplemented and amended to include the following new specifications:
“That you did by telephone during January, 1971 and by letter dated January 9, 1971, addressed to Mr. Eugene Goss of Harlan, Kentucky, directly solicit employment as an attorney by association and otherwise. In said telephone conversation and letter you advertised your availability and expertise without justification and in contravention of all rules concerning solicitation and advertising including those specifically found in the Code of Professional Responsibility.”
Pursuant to notice and the rules of the Louisiana State Bar Association, a formal hearing was held by the Committee on March 17, 1971. The Committee unanimously concluded that Rutledge was guilty of misconduct and filed, April 16, 1971, a petition for disbarment in this Court. It alleged and prayed:
“That a hearing was held on said specifications on March 17, 1971; that *537 your Committee unanimously concluded that the Respondent had been guilty of the misconduct set forth in said Specification No. 1 of January 20, 1971 and that such misconduct justifies the action instituted herein; and that a copy of this specification is annexed hereto just as if copied herein in extenso.
“That your Committee also concluded that the Respondent was also guilty of the misconduct set forth in Specification No. 2 dated February 10, 1971, a copy of which is annexed hereto as if copied in extenso; and that although this conduct in and by itself may not have required the serious action taken by your Committee, the Committee concluded that it should be brought to the Court’s attention in connection with Specification No. 1.
“That petitioner files herewith the entire manuscript of testimony in evidence, both oral and documentary, developed before the Committee in its formal hearing.
“WHEREFORE, petitioner prays that Respondent be ordered to plead or answer within fifteen (15) days from the date of service of a copy of this petition, and after issue joined, that the Court appoint a Commissioner to take the evidence, and, in due course, report to this Honorable Court his findings of fact and conclusions of law, and that, ultimately the Respondent be suspended from the practice of law, and that the name of William P. Rutledge, Respondent, be stricken from the Roll of Attorneys and his license to practice law in the State of Louisiana be cancelled for a period deemed appropriate by this Court.”
Issue was joined, and on May 25, 1971, this Court appointed Louie M. Cyr as Commissioner to take evidence and to report to us his findings of fact and conclusions of law. On November 5, 1971, the Commissioner held a hearing at which Rutledge appeared, represented by counsel. (He did not choose to be represented by counsel at the Committee hearing although he was fully informed of his right to counsel.) The Commissioner’s report was concluded July 6, 1972 and filed in this Court on July 10, 1972. The Commissioner found Rutledge guilty of Specification No. 1, supra, and found him guilty of only that portion of Specification No. 2 which charges him with advertising his availability and expertise without justification. The Commissioner recommended that the name of William P. Rutledge, Respondent, be stricken from the Roll of Attorneys and his license to practice law in the State of Louisiana be cancelled for a period of five years from the date of the final decree in this matter.
On July 26, 1972, the Louisiana State Bar Association through the Committee filed in this Court its Concurrence to the Report of the Commissioner; it represented that the Committee concurred in the Commissioner’s findings of fact and conclusions of law. The Committee, however, stated that it did not concur in the Commissioner’s recommendation as to the appropriate discipline, feeling that the discipline recommended was excessive; it suggested that this Court, in making its final determination, give serious consideration to the Committee’s position as stated.
This cause was given special assignment for hearing in this Court under our original jurisdiction. Art. VII, Sec. 10, La. Const, of 1921. Briefs were filed, and on the day set for argument, the Hearing Committeeman of the Committee, defense counsel, and the defendant argued the matter.
The Committee submits that “the record reflects with clarity the guilt of the Respondent as set out in detail in the Court’s Commissioner’s report. Respondent’s conduct and the offense of which he is guilty dictate the need for appropriate disciplinary action to protect the public, courts, and profession and to serve as a deterrent to Respondent in his future conduct. Petitioner would recommend that Respondent *538 be suspended from the practice of law for a period determined by this Court as sufficient to accomplish the above purposes.” (The Committee asserted that it thought defendant did not deserve suspension of five years.)
Counsel for Rutledge pray that this Court dismiss the charges against him, and even if the Court should determine that his actions were violative of some rule of ethical conduct, that the Commissioner’s recommendations as to penalty be rejected, and that respondent be disciplined in proportion to the gravity of his actions.
Defendant is contrite, and in his appearance before us begged for mercy; he avowed that he had learned a lesson and in the future would abide by all mandates of the Code of Professional Responsibility to the letter.
There is no need for a lengthy discussion of the Specifications supra. They are self-explanatory; we find for reasons stated infra that they demand neither Rutledge’s disbarment nor suspension
SPECIFICATION NO. 1
The Commissioner found that the evidence fully supports the factual conclusion that respondent visited Mr. Guyote at Iberia Parish Hospital in March, 1970, for the express purpose of actively soliciting employment as attorney to represent Mr. Guyote and his then injured wife. (She is now deceased.)
Rutledge admits that one of his motives in visiting Mr. Guyote was the solicitation of employment, but he urges that he had a second motive, i. e., gathering information concerning railroad intersectional collisions. He states that he handles such matters in his practice, and at the time of his visit to Mr. Guyote was engaged as an attorney in a cause which involved an accident similar to that suffered by Mrs. Guy-ote.
We have read the evidence taken before the Committee and find that defendant did have as one of his motives in visiting Mr. Guyote the securing or soliciting of employment, but we also find from the evidence that there was no direct solicitation of and no pressure exerted on Mr. Guyote.[1] If solicitation of employment was Rutledge’s only motive in visiting Mr. Guyote, he did not accomplish his purpose and did not pursue it to the full extent of a solicitor. He merely gave Mr. Guyote one of his business cards which bore the names of other clients on its reverse side when he learned that Mr. Guyote had previously engaged an attorney in other matters. We find no conflict in the testimony *539 of Mr. Guyote and the position taken by Mr. Rutledge.
There can be no condonation of Rutledge’s actions. We find that his visit to the hospital was undignified and in poor taste, and his conduct in approaching Mr. Guyote was not of the ordinary standard required of a member of the Louisiana Bar. While we conclude that Rutledge was over zealous and ardent, he should not, under the present facts and circumstances, suffer the deprivation or suspension of his license to practice law.[2]
SPECIFICATION NO. 2
In his report, the Commissioner stated:
“The Commissioner has not been cited any law or provision of the Code of Professional Responsibility which prohibits an attorney from soliciting business from another attorney. Surprisingly, the Commissioner has been unable to find such a prohibition. But, be that as it may, the evidence shows that Respondent did hold himself out as a specialist to at least three Kentucky attorneys living in the area of the Hyden disaster, whose names he obtained from Martindale.
“Accordingly, Commissioner finds Respondent guilty of only that portion of Specification No. 2 which charges him with advertising his availability and expertise without justification.”
The Committee in its brief states:
“Respondent readily admits his actions under Specification No. 2 but would take the position that the solicitation of other attorneys and the concurrent advertising of expertise are not in violation of the Code of Professional Responsibility. There is no doubt that the new Code in DR 2-103 limits the prohibition of soliciting employment to that of non-lawyers. However, Respondent’s contact with the Kentucky lawyer can reasonably be interpreted as the indirect solicitation of non-lawyers through the Kentucky lawyer. Further, it shows a pattern when considered in conjunction with the Respondent’s actions under Specification No. 1. Finally, Respondent’s advertising to the Kentucky lawyer of his special competence or experience was in violation of DR 2-105(A) (3) of the Code of Professional Responsibility of the Louisiana State Bar Association.”
Having found that Specification No. 1 does not demand Rutledge’s suspension or disbarment, we find that Rutledge should not be punished under Specification No. 2 in view of the present facts and circumstances.
A reading of the evidence before the Committee discloses that Rutledge did not intend to foment litigation in Kentucky. He had handled claims in Louisiana salt mine cases and thought that his services accompanied by his professional knowledge and expertise might be of assistance to the Kentucky lawyers. We do not mean to say that he did not expect remuneration, but we conclude that what he was seeking was an association with other attorneys — out of State — in restricted and particular matters.
This Court has wide discretion in disciplining an attorney; our principal concern is with misconduct. Louisiana State Bar Association v. Ruiz and authorities therein cited and quoted, 261 La. 433, 259 So.2d 903 (1972). The gravity of the charge and the injury suffered by others are considered.
We conclude that herein a reprimand is sufficient discipline for respondent William P. Rutledge. We reprimand him with an observation that the legal profession is an honorable and dignified one; it has a duty to the public, courts and the members thereof; it demands that its members act with self-restraint and dignity, neither advertising their professional skill nor solicit *540 ing employment from potential clients. They should act in such manner as to capture and hold the confidence and respect of the public. Respondent must act in the future with propriety and confine his professional expertise to clients who have voluntarily come to him and engaged his services.
For the reasons assigned, William P. Rutledge is hereby reprimanded; otherwise, the disbarment proceeding ■ against him is dismissed at his costs.
BARHAM, J., concurs.

. Pertinent testimony of Mr. Guyote is as follows:
“Q. Mr. Guyote, did Mr. Rutledge mention to you how he had come to speak to you?
“A. If I remember right he mentioned something about reading in the newspaper and so forth, he read about the accident, or something of that nature. He said something about having some dealings with cases similar to this, he thought possibly he could help me with this information, just by giving me this information.
“ * * *
“Q. Did he discuss any terms, on what basis he would handle your case for you?
“A. No, sir. He never actually mentioned anything about handling her case for me. All he told me was he had some information he wanted to give me.
“Q. Where was that information?
“A. Well, the information about the case he had similar to my case, that I could have if I wanted. In other words — ”
Guyote also testified that: “During the process of talking he mentioned about several cases he had and the people he told me about to refer to if necessary in the cases he handled and some of them he still had in proceedings. On the back of his card he wrote down the names of some of them.
“Just generally we talked about the accident and so forth, and in other cases that he said he handled of this nature, and that was about it. It lasted, I figure, approximately half an hour, maybe not that long. As I say, I am not quite sure on the time about it. And he left. He left me with his card. That was it.”

. The record is replete with letters, etc. as to Rutledge’s capability, education, devotion to his practice, and responsibility to his clients.